UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| WILLIAM P. GALLOWAY | ) | CASE NO. 5:09CV02834 |
| | ) | |
| Plaintiffs, | ) | JUDGE JOHN R. ADAMS |
| | ) | |
| vs. | ) | **MEMORANDUM OF OPINION** |
| | ) | **AND ORDER** |
| | ) | |
| TIMOTHY A. SWANSON, et al., | ) | [Resolving Docs. 159, 165, 167, and |
| | ) | 172] |
| Defendants. | ) | |
| | ) | |

This matter comes before the Court on Defendants Stark County, Sheriff Timothy Swanson, Chief Michael McDonald, Deputy Jeffrey McCollister, Jonathan Stump and Doctor Thomas Anuszkiewicz's motions for summary judgment under Rule 56.  Docs. 159, 165, 167, and 172.  The Court has reviewed the briefings and applicable law.  For the reasons stated herein, the Court GRANTS in part Defendants' motions for summary judgment.

## I.    BACKGROUND

Decedent Steven Galloway ("Mr. Galloway") was a military veteran diagnosed as a paranoid schizophrenic, a mental disorder that led to his discharge from the military and contributed to minor scrapes with the law.  On Sunday, June 1, 2008, the Canton Police Department arrested Mr. Galloway at 3:30 p.m. for criminal trespass and resisting arrest. Following his arrest, the police took Mr. Galloway to the Stark County Jail.  Before his arrest, Mr. Galloway had served two brief periods of incarceration in the Stark County Jail, one in 1999 and one from 2000-2001.

According to written medical and mental health agreements between Stark County and Correctional Health Care Group, Inc. ("CHCG"), it is the responsibility of CHCG nurses to

decide whether an individual is suitable for admission into the Jail or is in need of outside medical treatment.  Upon Mr. Galloway's arrival at the Jail, CHCG Nurse Rick Blackwell performed a mandated medical and mental health screening.  Notwithstanding the fact that he considered Mr. Galloway's behavior during the screening to be "delusional," Nurse Blackwell admitted Mr. Galloway to the jail.  Mr. Galloway's delusional behavior included arguing with his own right hand and "accus[ing] [Nurse Blackwell] of working for somebody that he thought was after him."  Mr. Galloway denied having thoughts of hurting himself or committing suicide, but when Nurse Blackwell asked him about a large blister on the index finger of his right hand, Mr. Galloway told Nurse Blackwell "it needed punishment and I handled it."

No member of CHCG's mental health staff was at the Jail during Mr. Galloway's screening.  As such, Nurse Blackwell himself placed Mr. Galloway on psychiatric seclusion precautions with observations for self-harm every fifteen minutes.  Nurse Blackwell also ordered the corrections officers to give Mr. Galloway a suicide precaution blanket and a precaution mattress.  Nurse Blackwell placed Mr. Galloway on self-harm observations because he believed Mr. Galloway to be bipolar and experiencing a manic phase.  On June 2, 2008, at approximately 2:00 a.m., corrections officers placed Mr. Galloway in the Jail's mental health unit ("D Section").  Dr. Thomas Anuszkiewicz, the Jail's psychologist and clinical director, approved Nurse Blackwell's orders via telephone around 6:00 a.m. that morning.  Pursuant to a standing order of Defendant Jeffery Duffey, the Jail's medical director and a subcontractor of CHCG, Nurse Blackwell also placed Mr. Galloway on respiratory isolation for refusing a tuberculosis test during his screening.

On June 2, 2008, Ms. Sikula-Cleary, a mental health assistant employed by Marion Psychological, Inc.[1] ("MPI"), evaluated Mr. Galloway. She determined that Mr. Galloway was not exhibiting the paranoid behavior he had upon his admittance to the Jail and recommended to Dr. Anuszkiewicz that he be removed from precautions. After speaking with Ms. Sikula-Cleary, Dr. Anuszkiewicz removed Mr. Galloway from psychiatric seclusion precautions and self-harm observations and placed Mr. Galloway on observations every fifteen minutes for odd behavior. Mr. Galloway exhibited erratic behavior for the duration of his detention.  For example, on the morning of June 3, 2008, Mr. Galloway caused a disruption when he masturbated in front of other male inmates and nurses.  At approximately 7:00 p.m. that same day, Mr. Galloway attempted to open a window, telling a corrections officer "I need to see who's out there."  When the officer ordered Mr. Galloway to return to his cell, Mr. Galloway "took an aggressive stance, began looking at his fingernails on his right hand, and breathing deeply."

The housing log for D Section reflects that Dr. Anuszkiewicz and Dr. Jitendra Cupala, the Jail's psychiatrist, met with Mr. Galloway at 9:53 a.m. on June 4, 2008. During their visit, Dr. Anuszkiewicz and Dr. Cupala ordered corrections officers to take two blankets and a sheet from Mr. Galloway and give him a suicide precautions blanket.  There is no further testimony or documentation before the Court regarding the visit Dr. Anuszkiewicz and Dr. Cupala made to Mr. Galloway on June 4, 2008.  According to Dr. Anuszkiewicz and Defendant Jonathan Stump, the CEO of CHCG and the Jail's medical records custodian, progress notes on Mr. Galloway from June 2, 3, and 4 are missing.

---

[1] MPI is an entity owned by Dr. Anuszkiewicz that subcontracts with CHCG for the provision of mental health services at the Jail. MPI has two employees, Michelle Sikula-Cleary and Melissa Pittman.

3

At 2:00 p.m. on June 4, 2008, Corrections Officer Jeff McCollister began a shift of the D Section.  At that time, corrections officers were to observe Mr. Galloway every fifteen minutes for odd behavior.  Mr. Galloway was the only inmate in the D Section on any form of precautions or observations.  Sometime before Deputy McCollister began a round in the D Section, he let Mr. Galloway out of his cell to use the phone in the rear of D Section.[2]  Deputy McCollister observed Mr. Galloway on the phone twice between 5:33 p.m. and 6:05 p.m.  A review of the Jail's phone records, however, indicates that Mr. Galloway never called anyone. With Mr. Galloway still out of his cell, Officer McCollister began a medication round with Nurse Dawn Marshall at 6:20 p.m.  When Deputy McCollister and Nurse Marshall arrived at D Rear, Deputy McCollister asked Nurse Marshall to wait outside of the housing section so that he could put Mr. Galloway back in his cell in order to keep Mr. Galloway and the nurse separated. When Deputy McCollister opened the door between the hallway and D Rear, he observed Mr. Galloway lying against the wall with the telephone's 24-inch steel cord wrapped around his neck. Emergency responders transported Mr. Galloway to Mercy Medical Center in Canton where he died on June 21, 2008, from a "near hanging."

## II.  <u>PROCEDURAL HISTORY</u>

On December 5, 2009, Plaintiff William Galloway (hereinafter "Plaintiff"), Mr. Galloway's brother, filed a complaint containing nine federal and state law claims against fifteen individually named defendants, as well as a designation of "JOHN AND JANE DOES 1-15." On July 9, 2010, Plaintiff filed an amended complaint alleging claims against eleven defendants: Stark County, Sheriff Timothy Swanson, Chief Michael McDonald, Correctional Health Care Group, Inc., Jonathan Stump, Marion Psychological, Inc., Dr. Thomas Anuszkiewicz, Deputy

---

[2] In the part of D Section there are four telephones centered on the wall between the tables in the eating area for the inmates. None of the four telephones is cordless.

Jeff McCollister, Nurse Rick Blackwell, Dr. Jeffrey Duffey, and Dr. Jitendra B. Cupala. Plaintiff's claims against Nurse Blackwell, Dr. Duffey, and Dr. Cupala have been dismissed. The remaining defendants have all moved for summary judgment on the claims against each of them.

III.   **LEGAL STANDARD**

Under Federal Rule of Civil Procedure 56(a), the Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  The party moving for summary judgment may satisfy its burden under Rule 56 in either of two ways: (1) "submit affirmative evidence that negates an essential element of the nonmoving party's claim," or (2) "demonstrate to the Court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim." *Celotex Corp. v. Catrett*, 477 U.S. 317, 331 (1986).

A movant is not required to file affidavits or other similar materials negating a claim on which its opponent bears the burden of proof, so long as the movant relies upon the absence of the essential element in the pleadings, depositions, answers to interrogatories, and admissions on file. *Id.*  Likewise, the moving party's burden of production "may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

In reviewing summary judgment motions, this Court must view the evidence in a light most favorable to the non-moving party to determine whether a genuine issue of material fact exists. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970); *White v. Turfway Park Racing Ass'n.*, 909 F.2d 941, 943-44 (6th Cir. 1990). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards. Thus, in most civil cases the Court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict." *Id.* at 252.

Summary judgment is appropriate whenever the non-moving party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322.  Moreover, "the trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989), *citing Frito-Lay, Inc. v. Willoughby*, 863 F.2d 1029, 1034 (D.C. Cir. 1988).  The non-moving party is under an affirmative duty to point out specific facts in the record as it has been established which create a genuine issue of material fact. *Fulson v. Columbus*, 801 F. Supp. 1, 4 (S.D. Ohio 1992). The non-movant must show more than a scintilla of evidence to overcome summary judgment; it is not enough for the non-moving party to show that there is some metaphysical doubt as to material facts. *Id.*

## II.    ANALYSIS

### A. Steven Galloway's constitutional rights were not violated, therefore Plaintiff's 42 U.S.C. § 1983 claim for failure to provide adequate medical care fails as a matter of law.

Plaintiff asserts in his First Amended Complaint that Sheriff Swanson, Stark County, Deputy McCollister, Mr. Stump, and Dr. Anuszkiewicz violated Mr. Galloway's right to the opportunity to an adequate medical and mental health evaluation; the right to necessary medications; the right to be protected while incarcerated; the right to adequate and reasonable medical care when incarcerated; and the right to be free from cruel and unusual punishment.

Plaintiff claims that these rights include the right to receive necessary medication and to monitoring while in the custody and control of the Jail and while on precautions.

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

> The right to adequate medical care is guaranteed to convicted federal prisoners by the Cruel and Unusual Punishment Clause of the Eighth Amendment, and is made applicable to convicted state prisoners and to pretrial detainees (both federal and state) by the Due Process Clause of the Fourteenth Amendment. *See Estelle v. Gamble*, 429 U.S. 97, 101-02, 104-05, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); *DeShaney v. Winnebago County Dep't of Soc. Servs.*, 489 U.S. 189, 198, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989); *Weaver v. Shadoan*, 340 F.3d 398, 410 (6th Cir. 2003); *see also Bell v. Wolfish*, 441 U.S. 520, 545, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979) ("*Afortiori*, pretrial detainees, who have not been convicted of any crimes, retain at least those constitutional rights that we have held are enjoyed by convicted prisoners."). A prisoner's right to adequate medical care "is violated when prison doctors or officials are deliberately indifferent to the prisoner's serious medical needs." *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001), cert. denied, 537 U.S. 817, 123 S.Ct. 86, 154 L.Ed.2d 22 (2002). Although the right to adequate medical care does not encompass the right to be diagnosed correctly, this court has "long held that prison officials who have been alerted to a prisoner's serious medical needs are under an obligation to offer medical care to such a prisoner." *Id.* (*citing Danese v. Asman*, 875 F.2d 1239, 1244 (6th Cir. 1989), cert. denied, 494 U.S. 1027, 110 S.Ct. 1473, 108 L.Ed.2d 610 (1990)).

*Johnson v. Karnes,* 398 F.3d 868, 873-874 (6th Cir. 2005).

"A claim for the deprivation of adequate medical care has two components, one objective and one subjective." *Id.* at 874 (citation and internal quotation marks omitted). "To satisfy the objective component, the plaintiff must allege that the medical need at issue is 'sufficiently serious.' " *Id.* (emphasis omitted). "To satisfy the subjective component, the plaintiff must allege facts which, if true, would show that the official being sued subjectively

perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk." *Id.* (emphasis omitted).

Plaintiff's response in opposition to the motions for summary judgment clarifies that Plaintiff's claim of inadequate medical care focuses solely on Defendants' alleged violation of Mr. Galloway's constitutional right to be protected from self-harm.

> Thus, in the specific context of detainee suicide-the event at issue in this case-this Court inquires "whether the decedent showed a strong likelihood that he would attempt to take his own life in such a manner that failure [by a defendant] to take adequate precautions amounted to deliberate indifference to the decedent's serious medical needs." *Gray v. City of Detroit*, 399 F.3d 612, 616 (6th Cir. 2005) (quoting *Barber v. City of Salem*, 953 F.2d 232, 239-40 (6th Cir. 1992)); *see also Novack*, 226 F.3d at 529 ("[A] prison official must be cognizant of the significant likelihood that [the detainee] may imminently seek to take his own life and must fail to take reasonable steps to prevent the [detainee] from performing this act.").

*Linden v. Washtenaw County*, 167 Fed.Appx. 410, 416 (6th Cir. 2006).

## 1. The Objective Test

"The Sixth Circuit has long recognized that psychological needs manifesting themselves in suicidal tendencies are serious medical needs in the Eighth Amendment context." *Id.* (citations and quotations omitted). Plaintiff argues that Mr. Galloway demonstrated suicidal tendencies in various ways. Specifically, Plaintiff alleges the following facts are sufficient to meet the objective component:

- Mr. Galloway became agitated when he was asked questions about whether he was having suicidal thoughts;

- Mr. Galloway reported to Nurse Blackwell during his medical screening that his hand needed to be punished;

- The psychological evaluation performed during medical screening reflects a question mark ("?") in the box addressing Mr. Galloway's suicide risk;

8

- Nurse Blackwell ultimately placed Mr. Galloway on precautions and observations for self-harm;

- Dr. Anuszkiewicz agreed with Nurse Blackwell's placement of Mr. Galloway on precautions and observations for self-harm; and

- Dr. Anuszkiewicz ordered that Mr. Galloway be provided a suicide precautions blanket instead of the standard two sheets for inmates.

Additionally, Plaintiff's expert, Dr. James Knoll, opined that Mr. Galloway presented at the Stark County Jail with a serious medical need. Dr. Knoll supported his opinion with the following:

- When Mr. Galloway was evaluated on 6/2/08, he was noted to be "very paranoid and delusional." These symptoms resulted from his serious mental illness of chronic paranoid schizophrenia, which had been well documented in the past.

- Deputy McCollister reported observing Mr. Galloway display overt signs of a serious mental illness.

- Mr. Galloway was prescribed Trilafon and Zyprexa. Both are antipsychotic medications.

- Throughout his incarceration, Mr. Galloway was described as "odd" and "aggressive."

- Throughout his incarceration, Mr. Galloway required special observation status, and removal of blankets due to his serious mental illness.

(Direct quote from Doc. 171-1 at 22.)

The Court will assume, *arguendo*, that Plaintiff has met the objective component of the inquiry.

## 2. The Subjective Test

To satisfy the subjective component, the plaintiff must allege facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk. *Linden* 167 Fed.Appx. at 416 (citing *Farmer*, 511 U.S. at 837, 114 S.Ct. 1970). "Emphasizing

the subjective nature of this inquiry, the Supreme Court has noted that an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Id*. citing *Farmer* at 838 (quotation omitted).

### a.  Deputy McCollister

There is no evidence in the record that Deputy McCollister actually perceived Mr. Galloway to be a suicide risk.  Plaintiff argues that Deputy McCollister was the officer responsible for monitoring Mr. Galloway in the D Section of the jail and therefore perceived conduct indicating Mr. Galloway was a risk for self-harm.  In fact, the record shows that despite Mr. Galloway being on precautions for "odd" behavior, Deputy McCollister never perceived Mr. Galloway to be a suicide risk.

On June 3, 2008, the day before Mr. Galloway attempted suicide, Deputy McCollister monitored Mr. Galloway in D Section.  The log indicated that Mr. Galloway started the day on psychiatric seclusion but that such seclusion was discontinued and he was placed on 15-minute observations for odd behavior.  Upon beginning his shift on June 4, Deputy McCollister again reviewed the daily log for D Section. The log reflected that Mr. Galloway was on 15-minute observations for odd behavior and aggression. Deputy McCollister testified that the "aggression" label was added as a result of Mr. Galloway refusing to go back to his cell when ordered by another officer.

Deputy McCollister did not observe any behavior by Mr. Galloway that he perceived as aggressive or odd. He noted that during observations Mr. Galloway was yelling, but testified that it was not out of the ordinary for inmates to yell.  Deputy McCollister testified that he did not know about the incident regarding Mr. Galloway talking to his right hand or that Mr. Galloway was potentially paranoid. During his observations of Mr. Galloway, Deputy McCollister did not

have any resistance from Mr. Galloway, except when Mr. Galloway refused his medications and tray.

Dr. Knoll states that Deputy McCollister should have known of Mr. Galloway's risk of suicide because "[p]lacement of an acutely psychotic individual on an observation status inherently implies risk[,]" and the removal of Mr. Galloway's blankets and sheets in exchange for a precaution blanket "inherently implies risk."  Yet the evidence shows that Deputy McCollister did not perceive these events as indicative that Mr. Galloway was a serious risk for self-harm[3].  Deputy McCollister was aware that upon admission into the jail, Nurse Blackwell placed Mr. Galloway on psychiatric seclusion precaution, but was unaware that he was a potential risk for self-harm.  Deputy McCollister testified that the psychiatric seclusion precaution was discontinued shortly thereafter and Mr. Galloway was put on 15-minute observations instead.  Deputy McCollister was also aware that Mr. Galloway's sheets had been removed and that Mr. Galloway had been given a precaution blanket instead. He further testified that removal of sheets can be done for numerous reasons including preventing the inmate from blocking off the cell bars, stuffing the sheets down the toilet, or using them for other unintended purposes.

It is well established that "an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment."  *Farmer*, 511 U.S. at 838.  The record clearly demonstrates that Deputy McCollister simply did not perceive Mr. Galloway to be a risk for

---

[3] Plaintiff's briefing effectively concedes this point by arguing that McCollister misperceived the risk. Misperception clearly demonstrates that McCollister simply did not perceive the risk.  *See Linden*, 167 Fed.Appx. at 416 (citing *Farmer*, 511 U.S. at 838)).

suicide. Accordingly, Plaintiff's § 1983 claim against Deputy McCollister fails as a matter of law.

### b. Sheriff Swanson

Plaintiff has sued Sheriff Swanson[4] in his individual and official capacities in the First Claim for Relief.  The Sixth Circuit has held that "§ 1983 liability must be based on more than respondeat superior, or the right to control employees." *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). The supervisor cannot be held personally liable absent a showing that he "either encouraged the specific incident of misconduct or in some other way directly participated in it. At a minimum a plaintiff must show that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers." *Id*. (quoting *Hays v. Jefferson Cty.*, 668 F.2d 869, 874 (6th Cir.1982)). Plaintiff has produced no evidence that Sheriff Swanson authorized, approved, or knowingly acquiesced in the alleged violations of Mr. Galloway's adequate medical care.

Plaintiff does not argue in his responsive brief that Sheriff Swanson is liable in his individual capacity. In fact, Plaintiff argues only that Sheriff Swanson should be held liable, in his official capacity, for violating Mr. Galloway's right to adequate medical care because he "ratified the unconstitutional acts of Defendant McCollister by failing to meaningfully

---

[4] Plaintiff alleges that certain Defendants violated Mr. Galloway's right to adequate medical care. Specifically, Plaintiff states that "Swanson, Stark County, Deputy McCollister, Stump, Anuszkiewicz, Dr. Duffey, Dr. Cupala, and Nurse Blackwell, under color of state law, deprived Steven of clearly established rights, privileges and immunities secured by the Fourteenth Amendment to the United States Constitution, of which a reasonable person would have known." Plaintiff does not name Chief McDonald as a Defendant in his first claim for relief.  Even if, however, Plaintiff's First Amended Complaint could be read to plead a claim against Chief McDonald for failing to provide adequate medical care to Mr. Galloway, the same analysis applies to Chief McDonald and Plaintiff's claim fails as a matter of law.

investigate and punish the unconstitutional conduct." This allegation, however, is pleaded in Plaintiff's Second Claim for Relief.

Plaintiff has failed to provide any facts, or even argument, in response to Sheriff Swanson's motion for judgment as a matter of law against Plaintiff's First Claim for Relief. It appears as though Plaintiff has abandoned this claim against Sheriff Swanson.  Accordingly, Plaintiff's § 1983 claim for failing to give adequate medical care to Mr. Galloway fails as a matter of law as it applies to Sheriff Swanson in his individual and official capacities.

### c. Stark County

Plaintiff asserts a claim against Stark County for violation of § 1983 for failing to provide adequate medical care to Mr. Galloway. Plaintiff also asserts this claim against Deputy McCollister and Sheriff Swanson in their official capacities.

"To impose § 1983 liability on a municipality or local governmental entity, plaintiff must show that an officially executed policy, or the toleration of a custom, resulted in a constitutional deprivation." *Molton v. City of Cleveland*, 839 F.2d 240, 243 (6th Cir. 1988).  "Suing a municipal officer in his official capacity for a constitutional violation pursuant to 42 U.S.C. § 1983 is the same as suing the municipality itself[.]"  *Kraemer v. Luttrell*, 189 Fed.Appx. 361, 366 (6th Cir. 2006).

Plaintiff provided no argument in the memorandum in opposition to the motion for summary judgment regarding this claim.  Instead, Plaintiff alleges that Stark County is liable because Sheriff Swanson and Chief McDonald ratified the allegedly unconstitutional acts of Deputy McCollister by "failing to meaningfully investigate and punish the unconstitutional conduct." As this allegation is pleaded in Plaintiff's Second Claim for Relief, it will be reviewed below. Thus, it appears to the Court that Plaintiff has abandoned the official capacity claim

13

against Sheriff Swanson for failing to provide adequate medical care. Moreover, the Court has found that Deputy McCollister did not violate Mr. Galloway's constitutional right to adequate medical care. Accordingly, Plaintiff's § 1983 claim for failing to give adequate medical care to Mr. Galloway fails as a matter of law as it applies to Stark County.

### d. **Mr. Stump**

Plaintiff has not established any evidence that Defendant Jonathan Stump can be held liable for the alleged constitutional violations against Mr. Galloway. Similar to Chief McDonald and Sheriff Swanson, Plaintiff is required to present evidence that Mr. Stump authorized, approved, or knowingly acquiesced in the alleged violations of Mr. Galloway's adequate medical care. Plaintiff has made no such showing. In fact, it appears that Plaintiff has abandoned his individual capacity claim against Mr. Stump. In response to Mr. Stump's motion for summary judgment, Plaintiff only discusses his official capacity claim against Mr. Stump as a policy-maker at the jail. Accordingly, Plaintiff's individual capacity claim against Mr. Stump fails as a matter of law.

Defendant Correctional Health Care Group, Inc. ("CHCG"), the company who contracted with the jail to provide medical and mental health services inside jail, was not identified as a Defendant in Plaintiff's First Claim for Relief. Plaintiff, however, named Mr. Stump as a Defendant, in his official capacity, as the CEO of CHCG. An official capacity claim against an employee of a private corporation is viewed as a claim against the corporate entity itself. Therefore, Plaintiff's claim for relief against Mr. Stump in his official capacity is a claim against CHCG.

Official capacity liability exists when the plaintiff alleges that the entity's policy or custom is the cause of the alleged constitutional violation. Plaintiff contends that on behalf of

14

CHCG, Mr. Stump developed a policy to address what circumstances could preclude admission of an individual to the jail. The policy requires that a potential inmate's health complaints be assessed prior to admission into the Stark County Jail by trained health professionals. In the event that an inmate shows signs of acute distress, such as psychosis, the individual is to receive immediate medical attention at a hospital prior to being admitted to the jail. Plaintiff and his expert, Dr. Knoll, take issue with the purported policy language claiming that it is inaccurate and likely to confuse those implementing it. Dr. Knoll opines that the language of CHCG's policy defining "[p]sychotic patients" as "[a]ny patient who appears not to be oriented to time, place, or person; any person who has recently been apprehended in the act of suicide" was the "driving force" behind the deprivation of Mr. Galloway's constitutional rights.

As previously explained, the finding that a constitutional violation occurred is axiomatic to analyzing whether the policy at issue resulted in the constitutional violation. *Thurmond v. County of Wayne*, 447 Fed.Appx. 643, 651 (6th Cir. 2011). Thus, absent a finding of a violation of Mr. Galloway's rights, there is no need for the Court to review whether the policy caused the alleged harm. Here, as explained below, no constitutional violation occurred.

The record shows that upon arriving at the Jail, Nurse Blackwell evaluated and screened Mr. Galloway for medical issues. During the screening, Mr. Galloway specifically denied that he intended to harm himself or that he had previously attempted suicide. (See Deposition of Nurse Rick Blackwell, Doc. 169, at page 43-45; Doc. 170-5 at page 13.) After the prescreening, Nurse Blackwell went through the complete medical screen and noted that Galloway had not made any comments indicating an intent to commit suicide. Further, there is no evidence suggesting that Mr. Galloway had been recently apprehended in the act of suicide. Nurse Blackwell accepted

Mr. Galloway into the jail and recommended that he be placed on psychiatric seclusion and be observed every fifteen (15) minutes for "self-harm."

Not "every malpractice claim involving a prisoner [is] automatically transformed into a cause of action under the civil right statutes." *Sanderhofer v. Nichols*, 62 F.3d 151, 154 (6th Cir. 1995). Where "the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Westlake v. Lucas*, 537 F.2d 857, 860 (6th Cir.1976). Although Plaintiff may disagree with Nurse Blackwell's determination to accept Mr. Galloway into the jail, there is no evidence that Nurse Blackwell acted with deliberate indifference when performing the medical screening pursuant to the policy of CHCG. At most, Nurse Blackwell's diagnosis was possibly negligent, but it does not rise to the level of deliberate indifference.  Because the Court finds that there was no violation of Mr. Galloway's constitutional rights, it need not analyze the language of CHCG's policy.  Plaintiff's § 1983 claim for failing to give adequate medical care to Mr. Galloway fails as a matter of law as it applies to Mr. Stump and CHCG.

> **e.  Dr. Anuszkiewicz and MPI**

Plaintiff claims that Dr. Anuszkiewicz acted with deliberate indifference to Mr. Galloway's serious medical needs by not personally performing the mental health assessment on Mr. Galloway, removing Mr. Galloway from observations for self-harm and opting to place him on 15-minute observations for odd-behavior without personally evaluating Mr. Galloway, and removing Mr. Galloway's sheets and issuing him a precautions blanket but not changing his status to one reflecting concerns of self-harm.

Plaintiff erroneously relies on *Comstock v. McCrary*, 273 F.3d 693 (6th Cir. 2001), as its facts are very different from those here.  In *Comstock,* McCrary, the defendant jail physician,

16

completely ignored the reports and observations of other personnel before removing an inmate from suicide-precautions and returning the inmate to his cell.  The inmate then committed suicide. The evidence showed that McCrary did absolutely no review of the decedent's medical records before returning him to his cell and removing his precautions.  Moreover, the plaintiff in *Comstock* provided expert testimony opining that McCrary had acted with deliberate indifference to the decedent's medical needs.

Here, Dr. Anuskiewicz removed Mr. Galloway from observations for self-harm only after discussing Mr. Galloway's symptoms and condition with his mental health assistant, Ms. Sikula-Cleary, who had personally observed Mr. Galloway. The Court has found no authority to suggest that Dr. Anuskiewicz was required to personally meet with a patient face-to-face before removing him from observations for self-harm. Moreover, Plaintiff's expert Dr. Knoll does not criticize Dr. Anuszkiewicz's removal of Mr. Galloway from observations or issuing him a precautions blanket without also changing his status to one reflecting concerns of self-harm. Plaintiff has not produced evidence showing that Dr. Anuskiewicz acted with deliberate indifference to Mr. Galloway's serious medical need.  Accordingly, Plaintiff's § 1983 claim for failing to give adequate medical care to Mr. Galloway fails as a matter of law as it applies to Dr. Anuskiewicz and MPI.

### f.   Plaintiff's additional allegations.

Plaintiff's First Amended Complaint asserts numerous additional allegations of deliberate indifference against each of the above Defendants.  In each of the motions for summary judgment, the Defendants address these other allegations. However, Plaintiff's response in opposition to the Defendants' motions focused solely on the issues addressed above. After reviewing the Defendants' arguments, and having no contrary argument provided by the

17

Plaintiff, the Court finds that Plaintiff has abandoned these allegations. Plaintiff's First Claim for Relief, which asserts a § 1983 claim against the above Defendants for failing to give adequate medical care to Mr. Galloway, fails as a matter of law as it applies to all remaining Defendants.[5]

> **g.** **Governmental Immunity**

Defendants Sheriff Swanson, Chief McDonald, and Deputy McCollister each assert qualified immunity as a defense to Plaintiff's § 1983 claim.  Because the Court has found, as explained above, that Mr. Galloway's constitutional right to adequate medical care was not violated, it need not engage in an in-depth analysis of whether the Defendants are entitled to immunity.  However, the Court has reviewed the briefing and arguments from the parties and would grant Defendants' motions for summary judgment on Plaintiff's § 1983 claims based on a finding of qualified immunity for Sheriff Swanson, Chief McDonald, and Deputy McCollister.

**B.** **Plaintiff's Second Claim for Relief - *Monell*; Failure To Train and Supervise; 42 USC § 1983**

> 1. Sheriff Swanson, Chief McDonald, and Stark County

Defendants argue that Plaintiff has failed to set forth any facts upon he could support a claim against Sheriff Swanson or Chief McDonald for failure to supervise or train the employees at the Stark County Jail, resulting in a violation of Plaintiff's constitutional rights.

> [A] failure of a supervisory official to supervise, control, or train the offending individual officers is not actionable absent a showing that the official either encouraged the specific incident of misconduct or in some other way directly participated in it. At a minimum a plaintiff must show that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers.

---

[5] The Court has reviewed each of the allegations despite a lack of briefing by Plaintiff. That review does not support a claim of deliberate indifference against any of these Defendants.

*Hays v. Jefferson County*, 668 F.2d 869, 874 (6th Cir. 1982) (citing *Rizzo v. Goode*, 423 U.S. 362 (1976). If a plaintiff fails to allege that a named defendant was directly involved in the misconduct or that he "condoned, encouraged, or knowingly acquiesced in [that] alleged misconduct," his claims against the named defendant are subject to dismissal. *See McCallum v. Gilless*, 38 Fed. Appx. 213, 215 (6th Cir. 2002) (citing *Taylor v. Michigan Dep't of Corr.*, 69 F.3d 76, 80-81 (6th Cir. 1995); *Walton v. City of Southfield*, 995 F.2d 1331, 1340 (6th Cir. 1993)).

Plaintiff has failed to allege any facts that would indicate that either Sheriff Swanson or Chief McDonald was aware of the alleged misconduct at the Stark County Jail, or that either one in any way condoned the deputies' activities. There is no allegation that Sheriff Swanson or Chief McDonald acted to deprive Plaintiff of medical care.

Moreover, this Court has found that Deputy McCollister did not violate Mr. Galloway's constitutional right to adequate medical care.  Absent a finding that Mr. Galloway's constitutional right was violated, the Court need not review Plaintiff's claim under *Monell*. *Thurmond*, 447 Fed.Appx. at 651.  For these reasons, Sheriff Swanson and Chief McDonald's motion for judgment as a matter of law on the claims against them as they relate to their failure to train, supervise, or control is GRANTED.

Plaintiff focuses the *Monell* claim on Stark County's alleged improper investigation following Mr. Galloway's suicide. Defendants suggest that Plaintiff failed to plead this claim in the First Amended Complaint and cannot, therefore, raise it for the first time in response to the motions for summary judgment.  Paragraph 92 of Plaintiff's First Amended Complaint states: "These Defendants ratified the behavior of the Jail staff by failing to investigate and remedy the constitutionally impermissible policies, procedures and customs, which they knew would

implicate constitutional rights of inmates like [Mr. Galloway]."  Without deciding whether Plaintiff properly plead this claim, the Court finds that Plaintiff's claim fails as a matter of law.

A municipality may be held liable under § 1983 where the responsible law enforcement official has "ratified" unconstitutional conduct by completely failing to investigate a complaint of a constitutional violation. *Marchese v. Lucas*, 758 F.2d 181, 188–89 (6th Cir.1985).  A plaintiff must show that "(1) a final municipal policymaker approved an investigation ... (2) ... so inadequate as to constitute a ratification of the[ ] alleged" constitutional violation. *Wright v. City of Canton*, 138 F.Supp.2d 955, 966 (N.D.Ohio 2001).  As discussed above, this Court has determined that there was no violation of Mr. Galloway's constitutional right to adequate medical care.  Absent a violation of a constitutional right, it is unnecessary to review Plaintiff's ratification claim.[6]

2.  Mr. Stump and CHCG

Plaintiff alleges that Mr. Stump failed to adequately train and supervise Stark County Jail corrections officers and medical and mental health staff in the intake, assessment, and correctional medical care and treatment of inmates.  In order to succeed on a failure to train or supervise claim under a 42 U.S.C. §1983 theory, a plaintiff must prove the following: 1) that the training or supervision was inadequate for the task performed; 2) that the inadequacy was the result of the employer's indifference; and 3) that the inadequacy was closely related to or

---

[6] The Court notes that the Plaintiff's claim of ratification by improper investigation would fail even if there was a constitutional violation.  In cases where an investigation has been conducted, courts have been reluctant to impose municipal liability based on a ratification theory. *See Anthony v. Vaccaro*, 43 F.Supp.2d 843, 848 (N.D. Ohio 1999)(no municipal liability based on ratification theory where government officials conducted investigation of alleged misconduct); *Walker v. Norris*, 917 F.2d 1449, 1457 (6th Cir. 1990).  Here, Stark County conducted an investigation into Mr. Galloway's attempted suicide. Plaintiff may not agree with the outcome of the investigation, but there is competent and sufficient evidence that an investigation was conducted.

actually caused the injury. *Ellis v. Cleveland Municipal School District*, 455 F.3d 690, 700 (6th Cir. 2006).

This Court has found that there was no violation of Mr. Galloway's constitutional right to adequate medical care.  Absent a finding that Mr. Galloway's constitutional right was violated, the Court need not review Plaintiff's claim under *Monell*.  *Thurmond*, 447 Fed.Appx. at 651.

Moreover, to prevail on a failure to adequately train claim, Plaintiff must show that the inadequacy was "closely related to" or "actually caused" the injury to Mr. Galloway.  The specific injury must be connected in this manner to the alleged constitutional violation. *Abdi v. Karnes*, 556 F. Supp.2d 804, 817 (S.D. Ohio 2008). Plaintiff has not demonstrated that any alleged failure to adequately train mental health, medical or corrections staff by Mr. Stump was closely related to or actually caused Mr. Galloway's self-inflicted injuries.

For these reasons, Mr. Stump and CHCG's motion for summary judgment on Plaintiff's Second Claim for Relief is GRANTED.

### 3.     Dr. Anuszkiewicz and MPI

Plaintiff argues that Dr. Anuszkiewicz is liable in his official capacity for failing to train the CHCG nurses regarding jail admission and monitoring people on precautions and observations despite being qualified to do so.[7]  However, this Court has found that there was no violation of Mr. Galloway's constitutional rights. As such, Plaintiff's Second Claim for Relief as it applies to Dr. Anuszkiewicz and MPI fails as a matter of law.

### C.  State law claims

Having disposed of the Plaintiff's claims under federal law, the Court now turns to the state law claims of wrongful death, survivorship, intentional infliction of emotional distress, and

---

[7] Plaintiff cites to no requirement that Dr. Anuszkiewicz train CHCG nurses.

spoliation of evidence against the Defendants. The exercise by a district court of supplemental, or pendent, jurisdiction over state law claims is governed by title 28 section 1367 of the United States Code, which expressly permits the Court to decline the exercise of jurisdiction when it has dismissed all claims over which it has original jurisdiction. See 28 U.S.C. § 1367(c)(3). Absent any remaining federal claims, the Court, in its sound discretion, hereby dismisses without prejudice the Plaintiff's claims against the Defendants under state law. *See Weeks v. Portage County Executive Offices*, 235 F.3d 275, 279-80 (6th Cir. 2000) (stating that a district court's decision to decline to exercise supplemental jurisdiction lies within its sound discretion).


## V.     <u>CONCLUSION</u>

The Court GRANTS in part Defendants' motions for summary judgment as set forth herein, and dismisses without prejudice Plaintiff's remaining state law claims against all remaining Defendants.

IT IS SO ORDERED.


DATE: February 28, 2012          */s/ John R. Adams*
                                 Judge John R. Adams
                                 UNITED STATES DISTRICT COURT